## THE JOHN CUTTRELL.

*(District Court, E. D. New York. December 12, 1881.)*

1. MARITIME LIENS—TOWAGE SERVICE—SALE UNDER A STATE LAW.

    By the maritime law of the United States, one who performs towage services for a domestic vessel, on navigable waters of the United States, acquires a maritime lien on the vessel, which he can enforce by an admiralty proceeding *in rem;* and the lien cannot be destroyed by a subsequent sale of the vessel under a state law.

2. LACHES.

    On the facts of this case, a defence based on the ground of laches must fail.

In Admiralty.

*H. G. Hull*, for libellant.

*Tunis G. Bergen*, for claimant.

BENEDICT, D. J. This is a proceeding *in rem* to enforce a lien for services performed in towing the lighter John Cuttrell. The nature and amount of the services are admitted. These services were necessary to enable the lighter to make voyages and earn freight. It was by means of them that she was enabled to navigate. It cannot, therefore, be doubted that the services in question, rendered as they were in the performance of a maritime contract, are maritime in character. The demand is, then, within the jurisdiction of the admiralty. It is equally clear that these services, by reason of their

character, gave rise to a maritime lien upon the lighter. The existence of such a lien is not affected by the fact that the lighter was a domestic vessel. The supreme court of the United States adhere to the anomalous doctrine that when the vessel is domestic a materialman has no lien by the maritime law of the United States; but that doctrine has never been extended to such a case as this, where the claim is for services performed in navigating a vessel on navigable waters of the United States, in the harbor of New York, and in part between New York and Weehauken, in the state of New Jersey, and I am by no means inclined so to extend it.

The right of the libellant to maintain this proceeding I therefore consider to be clear, and I proceed to consider the matters of defence. One defence is that the claim is stale and the lien lost by laches. The service rendered to this vessel, as disclosed by the libel, was in substance a continuous service, extending through the months of August, September, October, and November, 1879. In January, 1880, the vessel was taken possession of by the sheriff, by virtue of a writ from the state court, and retained in his custody until March 12, 1880, when she was sold to the present claimant at sheriff's sale. The libel in this proceeding was filed March 1, 1880, and notice thereof was given at the sheriff's sale. Upon these facts it is impossible to contend that there has been any unreasonable delay in enforcing this demand, and the defence based on the ground of laches must fail.

Lastly, it is contended that the libellant's lien was cut off by the sheriff's sale of the vessel. That sale was had in a proceeding taken in accordance with the laws of the state of New York (Laws 1862, c. 482) to enforce a lien for repairs and material furnished, created by those laws, and whatever may be finally settled in respect to the validity of such a sale for any purpose, I am unable to see how it can ever be held that the legal effect of such a sale is to destroy a maritime lien upon the vessel existing at the time of the commencement of the proceedings under the state law, and which by the laws and constitution of the United States the parties have the right to enforce by an admiralty proceeding *in rem*. *The Lottawanna*, 21 Wall. 580.

My opinion, therefore, is that the libellant's lien was not affected by the sheriff's sale in the proceeding taken in the state court, and remains a valid and subsisting lien upon this vessel, capable of being enforced by this proceeding. Let a decree be entered condemning the vessel to pay the libellant's demand, with costs.